* * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. An employee-employer relationship existed between the parties on September 4, 2000.
5. North Carolina Farm Bureau Mutual Insurance Company was the carrier on the risk.
6. Plaintiff sustained a compensable injury on September 4, 2000.
7. Plaintiff's average weekly wage is $866.71, yielding a compensation rate of $577.84.
8. The parties stipulated to the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records and reports.
 b. Stipulated Exhibit #2: Plaintiff's discovery responses.
 c. Stipulated Exhibit #3: Earning records and related documents.
 d. Stipulated Exhibit #4: Wage information and a Form 22.
 e. Stipulated Exhibit #5: Industrial Commission forms.
 f. Stipulated Exhibit #6: Return receipt request forms.
9. The Pre-Trial Agreement, dated February 2, 2004, which was submitted by the parties, is incorporated by reference. 10. The issue before the Commission initially was whether plaintiff's claim for benefits was time barred by N.C. Gen. Stat. § 97-47. Based upon the decision of the Court of Appeals that plaintiff's claim was not time barred, the only issue before the Commission upon *Page 3 
remand is whether plaintiff's medical condition as of July 3, 2002 is causally related to his compensable injury by accident.
 * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible and convincing evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was 47 years old at the time of the hearing before the Deputy Commissioner and was a high school graduate. Plaintiff began working for defendant-employer in July 2000 as a delivery driver. Plaintiff's job duties included palletizing cartons of eggs according to orders from the stores on his route, loading the pallets onto his truck, driving to the stores and unloading the eggs from his truck.
2. On September 4, 2000, plaintiff sustained a compensable injury by accident when he fell from a loading dock at a Food Lion store while making a delivery. Plaintiff was attempting to climb down the loading dock, which was full of large bundles of cardboard. Plaintiff felt himself begin to fall and grabbed the railing on the loading dock with his left arm. Plaintiff felt his arm and shoulder strain, so he let go of the railing, falling to the ground. Plaintiff landed on his buttocks on the pavement. As a result of the fall, plaintiff injured his low back. On September 7, 2000, plaintiff saw a physician's assistant at Dr. W. Jones' office, where he was treated with medication and heat, and was taken out of work. Plaintiff's symptoms persisted despite the treatment and he was subsequently referred to Dr. Jeffrey Daily, an orthopedic surgeon. *Page 4 
3. On September 13, 2000, Dr. Daily examined plaintiff, changed his medication and ordered physical therapy. Since plaintiff's symptoms appeared to be confined to his low back, no further diagnostic tests were ordered at that time. On September 26, 2000, plaintiff returned to work with restrictions and rode with another driver for whom he completed the paperwork associated with the route.
4. On October 3, 2000 defendants filed a Form 60 admitting the compensability of plaintiff's injury. On the same date defendants also filed a Form 28B stating that plaintiff had returned to work and the last compensation check was forwarded to him on October 3, 2000. The form noted, however, that final medical compensation had not been paid.
5. Despite medical treatment and work restrictions, plaintiff continued to experience significant back pain. Dr. Daily referred plaintiff to Dr. John Welshofer, a physiatrist.
6. On October 27, 2000, Dr. Welshofer examined plaintiff. Dr. Welshofer noted that plaintiff might have sustained an annular tear to one of his lumbar discs and ordered an MRI. Dr. Welshofer also changed plaintiff's medication. Plaintiff returned to Dr. Welshofer on November 22, 2000 and reported significant improvement. The MRI showed mild spinal stenosis at L2-3 and L3-4 and a slight disc bulge at L5-S1 with a possible annular tear. Plaintiff reported to Dr. Welshofer that he was feeling better overall. Dr. Welshofer released plaintiff with a 0% permanent partial impairment to his back and authorized him to return to work with no restrictions on November 23, 2000. Dr. Welshofer also advised plaintiff to return if his back pain recurred.
7. On March 15, 2001, defendants filed a second Form 28B, stating that the last medical compensation was paid on February 20, 2001. *Page 5 
8. Plaintiff did return to work at his regular job, but had several flare-ups of back pain in the subsequent months. On those occasions, plaintiff asked a neighbor to help him load his truck. Other than those episodes, plaintiff was able to continue working until June 2001, when he became depressed due to his inability to pay bills and other financial problems. On June 8, 2001, plaintiff stopped reporting for work and defendant-employer subsequently terminated plaintiff's employment. In July 2001, plaintiff recovered sufficiently from his depression and began working for Employee's Express as a truck driver. Plaintiff left that employment the following month to work for J. B. Hunt, where plaintiff worked as a long-haul truck driver. In January 2002, plaintiff stopped working for J. B. Hunt and obtained another truck driving job with Lester Coggins Trucking, where he worked until July 2002. While employed with Lester Coggins Trucking, plaintiff sometimes traveled 3,000 miles per trip. Plaintiff was paid based on the number of miles driven and his pay stubs reflect a deduction for health care coverage. While he was driving, plaintiff continued to experience low back pain in the same location and the pain never went completely away.
9. On June 27, 2002 plaintiff had returned from driving a trip and awoke after having slept during the night on a couch. Plaintiff had difficulty standing and could hardly walk due to low back pain. Although plaintiff's back continued to bother him, he did not go to the doctor. Instead, plaintiff went to work and while still in pain drove a load to central Florida. Once he arrived at his delivery point, plaintiff was unable to unload his truck. Plaintiff was in so much pain that an ambulance was called to take him to the hospital. On July 3, 2003, plaintiff went to the emergency room at Leesburg Regional Medical Center in Florida. Plaintiff reported low back pain radiating to his right side since the previous weekend. Plaintiff denied a history of *Page 6 
trauma or strenuous exercise. Plaintiff was treated with medication, rest, ice and heat. Another truck driver came to Florida to drive plaintiff back to North Carolina.
10. On July 9, 2002, plaintiff sought chiropractic treatment with Dr. Douglas Burch, who noted plaintiff complained of low back pain and radiating pain and numbness to plaintiff's right buttock and thigh, with a history of onset on June 29, 2002. Dr. Burch treated plaintiff until the end of July, but then recommended that plaintiff return to Dr. Welshofer due to his persistent symptoms.
11. By the end of July 2002, plaintiff no longer had health insurance coverage because his employment with Lester Coggins Trucking ended. On August 7, 2002, plaintiff went to Dorn Veterans Affairs Medical Center in Columbia, South Carolina and saw a physician's assistant. Plaintiff indicated that he fell and broke his tail bone while stationed in Belgium many years before when he was serving in the military and had chronic problems with low back pain since then. Plaintiff stated that his symptoms had become worse during the previous six months. Plaintiff also complained of problems in his left shoulder and arm. The physician's assistant ordered an MRI of plaintiff's lumbar spine, which provided similar results to the one performed in November 2000. Since there was no significant nerve compression demonstrated, plaintiff was treated with conservative measures.
12. On February 14, 2003, plaintiff submitted a motion to reopen his claim based upon a change of condition. Defendants denied liability for the symptoms plaintiff developed in June 2002, but did authorize plaintiff to return to Dr. Welshofer after the Deputy Commissioner's hearing.
13. At a follow-up appointment at the V.A. Medical Center on March 10, 2003, plaintiff informed the physical therapist of his fall at work with defendant-employer. Plaintiff *Page 7 
indicated that he had continued episodes of back pain, that in 2002 his symptoms had progressed to his right leg, and that he quit working because his symptoms had gotten so bad that he was unable to unload his truck. Plaintiff underwent an MRI and was treated with a TENS unit. Plaintiff was seen at the V.A. Medical Center again in April 2003 but did not receive further medical treatment for the next three months.
14. On July 1, 2003, plaintiff went to Dr. Sandra Abda, an orthopedic surgeon. Plaintiff was still experiencing low back and right leg pain, and was also complaining of problems with his left shoulder and arm. Dr. Abda injected plaintiff's shoulder and ordered an MRI, which showed a partial rotator cuff tear. Dr. Abda's partners, Dr. Joseph King and Dr. Chason Hayes, primarily treated plaintiff's left shoulder problem during the next six weeks. Plaintiff then returned to Dr. Abda who thought that plaintiff was too heavy to have surgery for his low back problems, as plaintiff gained almost fifty pounds since his September 4, 2000 fall at work. On August 29, 2003 Dr. Abda noted in her records that she did not see how plaintiff could hold a job in his present condition. Dr. Abda sent plaintiff to Dr. Eric Nabors, a spine surgeon, for another opinion. Dr. Nabors examined plaintiff on October 10, 2003 and ordered a myelogram/CT scan. The tests revealed no evidence of spinal stenosis or a herniated disc; therefore, Dr. Nabors did not recommend surgery. On October 31, 2003, Dr. Abda gave plaintiff a ten percent rating to his back and released plaintiff from care and stated that he could drive a truck with no lifting.
15. Dr. Welshofer examined plaintiff again on March 1, 2004. Dr. Welshofer noted that plaintiff had new complaints of sciatica-type symptoms in his right leg, but he reviewed the recent MRI and agreed that there was no herniated disc or impingement shown that would explain plaintiff's complaints of radicular pain. Dr. Welshofer was of the opinion that plaintiff *Page 8 
was probably experiencing symptoms due to an annular tear and internal disc derangement at L5-S1 that began at the time of the compensable injury by accident. Dr. Welshofer agreed that plaintiff was not a surgical candidate due to his size, but thought that a discogram and an IDET procedure might be treatment options. Dr. Welshofer also recommended a functional capacity evaluation and electro-diagnostic studies which were not authorized by the carrier.
16. Dr. Welshofer testified to a reasonable degree of medical certainty that, absent evidence of re-injury and if plaintiff's symptoms never fully resolved, plaintiff's current condition is a continuation or exacerbation of and a natural progression of his September 4, 2000 injury. Dr. Welshofer stated that if plaintiff had no medical records between November 22, 2000 and June 3, 2002, it would be harder for him to say that plaintiff's current condition is probably related to his original injury on September 4, 2000, although long-haul truck driving and loading and unloading could materially aggravate and cause a significant exacerbation of plaintiff's condition.
17. Dr. Burch testified that a comparison of the November 2000 and August 16, 2002 MRIs shows a natural progression of plaintiff's condition over time. Specifically, Dr. Burch opined that his treatment of plaintiff in July 2002 and the August 16, 2002 MRI was due to a natural progression of his September 4, 2000 injury. He further stated that plaintiff's performance of his job with an L5-S1 annular tear and bulging disk would cause his condition to worsen. Dr. Burch stated that plaintiff could not sit on a couch without being in pain and that as of July 9, 2002 plaintiff was totally disabled from employment.
16. Dr. Abda testified that plaintiff's November 6, 2000 and August 16, 2002 MRIs did show a progression. She stated that most of plaintiff's problems were from his September 4, 2000 fall. Dr. Abda testified to a reasonable degree of medical certainty that plaintiff's current *Page 9 
condition is a natural consequence of his September 4, 2000 injury. On cross-examination, Dr. Abda testified that based upon plaintiff's MRIs in 2000, 2002 and 2003, she could not say there was a substantial change of plaintiff's condition and that the symptoms that plaintiff had in 2003 could possibly be related to work he performed after he was released to return to work.
18. The Full Commission finds by the greater weight of the medical evidence that plaintiff's low back condition after July 3, 2002 is causally related to the September 4, 2000 injury.
19. Plaintiff tried unsuccessfully to obtain vocational rehabilitation assistance from the V.A. and from State Vocational Rehabilitation. Although plaintiff tried to return to work for several different employers in 2001 and 2002, he was unable to sustain employment due to his continued low back pain. Plaintiff's back pain is 8 on a scale of 1-10, even with medications. He has severe pain in both legs and burning and numbness in his right foot. He has difficulty doing routine daily activities and sleeping at night.
20. As the result of his compensable injury by accident and resulting pain, plaintiff has been disabled and incapable of engaging in any employment beginning July 3, 2002 through at least the date of the Deputy Commissioner's Opinion and Award filed September 10, 2004. The record contains insufficient evidence on which to determine the extent of plaintiff's disability, if any, after September 10, 2004.
 * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon the findings, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW *Page 10 
1. On September 4, 2000 plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer which resulted in a low back injury. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted the compensability of plaintiff's injury by accident on September 4, 2000 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that she has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra. *Page 11 
4. In the instant case, plaintiff met his initial burden to show that he is disabled at least through the date of the Deputy Commissioner's Opinion and Award. Plaintiff was unable due to his compensable injury and resulting pain to return to his regular job driving a truck or to any other employment. Dr. Burch felt plaintiff was totally disabled from employment and as of March 2004 Dr. Welshofer, while not addressing return to work issues, recommended further diagnostic procedures, medical treatment and an FCE. The objective medical evidence that plaintiff suffers from genuine pain as the result of his injury by accident, when combined with plaintiff's own credible testimony that his pain is so severe that he is unable to work, establishes that plaintiff is totally disabled from any employment. Knight v. Wal-Mart, 149 N.C. App. 1,562 S.E.2d 434 (200020, aff'd per curiam, 357 N.C. 44, 577 S.E.2d 620
(2003).
5. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental and vocational limitations. Demery v. Perdue Farms, Inc., supra.
6. As a result of the compensable injury by accident and resulting pain, plaintiff was totally disabled and is entitled to total disability compensation at the rate of $577.84 per week beginning July 3, 2002 and continuing at least through September 10, 2004. N.C. Gen. Stat. § 97-29.
7. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283,286, disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Sneadv. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc., *Page 12 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendants to prove that the medical treatment is not directly related to the compensable injury. Id. The Court of Appeals has also held that an employer's payment of compensation pursuant to a Form 60, as in the case before us, is an award of the Commission and that the Parsons presumption applies. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. review improvidentlyallowed, ___ N.C. ___, 634 S.E.2d 887 (2006). However, in Perez, the Court of Appeals held that Form 60 payments of temporary total disability compensation are not a final award of the Commission, as contemplated by N.C. Gen. Stat. § 97-47. Perez v. American Airlines, supra.
8. In the case at bar, the greater weight of the evidence establishes that plaintiff's back condition since July 2002 is directly and causally related to his injury by accident on September 4, 2000. The Form 60 filed in this case was interlocutory and was not a final award. Perez v.American Airlines, supra. As such, the Parsons presumption applies and defendants failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Parsons v. Pantry, Inc.,supra.
9. As a result of his injury on September 4, 2000, plaintiff sustained a 10% permanent functional impairment to his back. N.C. Gen. Stat. § 97-31(23).
10. Since plaintiff filed his motion to reopen his claim on February 14, 2003, which was within two years of the last payment of medical compensation on February 20, 2001, plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may *Page 13 
reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * *
In accordance with the directives of the North Carolina Court of appeals, and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee awarded below, defendants shall pay plaintiff total disability compensation at the rate of $577.84 per week beginning July 3, 2002 and continuing until September 10, 2004. Such amount has accrued and shall be paid in a lump sum.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee of 25% of the compensation awarded in paragraph 1 above is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. In that the record contains insufficient evidence concerning the extent of plaintiff's disability, if any, after September 10, 2004, this issue is RESERVED for future determination. The parties may hereafter stipulate to the extent of continuing disability or either party may request an evidentiary hearing before a Deputy Commissioner on this issue.
5. Defendants shall pay the costs.
This 10th day of May 2007.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/________________ CHRISTOPHER SCOTT. COMMISSIONER.
DISSENTING:
S/________________ BUCK LATTIMORE CHAIRMAN.